## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CALVIN MERRITTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16−cv−0959−NJR** |
| | ) | |
| **STACI J. ARBUCKLE, ELAINE HARDY,** | ) | |
| **KAISER, POTTS, LONGEST,** | ) | |
| **TAMMY KIMMEL, CHRIS BROOKS,** | ) | |
| **WAGGONER, BAKER, MARCH,** | ) | |
| **HODGE, STEVEN DUNCAN,** | ) | |
| **BETHANY TREDWAY, STORM,** | ) | |
| **MOORE, S.A. GODINEZ,** | ) | |
| **WALTZ, VICKIE WALKER,** | ) | |
| **BROOKS, WALKER,** | ) | |
| **HUNDLEY, DEAN, OCHS,** | ) | |
| **BRAKE, WINKA, SELBY,** | ) | |
| **ADAMSON, CHAD RAY,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **and UNKNOWN PARTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Calvin Merritte, an inmate in Western Illinois Correctional Center, brings this action

for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the

Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event,
> as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks
> redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable
> claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which
> relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune
> from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Plaintiff originally filed this suit on August 26, 2016. (Doc. 1). On October 11, 2016, the Court reviewed the Complaint and determined that it was unsigned. (Doc. 5). The Court then entered an Order directing Plaintiff to submit a signed Complaint. (Doc. 5). Plaintiff submitted a First Amended Complaint in accordance with the Court's Order on October 21, 2016. (Doc. 8). Six days later, Plaintiff filed a Second Amended Complaint without explanation. (Doc. 9). Upon review of the Amended Complaint and the Second Amended Complaint, the Court has determined that the Amended Complaint is clearly missing pages, suggesting that it was filed in error. (Doc. 8). The Second Amended Complaint appears to be an attempt to correct this error. The only differences between the Second Amended Complaint and the original Complaint are references to two other lawsuits Plaintiff has filed recently in the section asking about his past litigation history, and of course, the missing signature. (Doc. 9). The Court therefore finds the Second Amended Complaint properly filed and will conduct a threshold review on that document. (Doc. 9).

## The Second Amended Complaint

Plaintiff alleges that he has allergies and asthma and that he disclosed these conditions upon his entrance into the Illinois Department of Corrections ("IDOC") on August 28, 2008. (Doc. 9, p. 14). Plaintiff was transferred to Lawrence Correctional Center in November 2011, and he alleges that medical staff should have been aware of his allergies and asthma. (Doc. 9, p. 14). Specifically,

Plaintiff alleges that Hardy, Kaiser, Potts, Longest, Kimmel, Brooks, Waggoner, Arbuckle, and Baker "became familiar" with his medical conditions through their obligation to review his medical files. (Doc. 9, p. 14). Plaintiff further alleges that he was prescribed medication and other treatment to address his symptoms caused by asthma, allergies, heartburn, migraines, pain, cysts/infections, and funguses, all of which Plaintiff alleges are serious medical needs, sometime between November 2011 and August 2014. (Doc. 9, p. 14). Those symptoms include: excruciating chest pain, facial and body swelling, migraines, shortness of breath, red itchy hives, burning and itchy sensations, and loss of consciousness. (Doc. 9, p. 14). Plaintiff experienced these symptoms from January 2012 through October 2014. (Doc. 9, p. 14).

Plaintiff alleges that, despite the fact that he followed the relevant policies and procedures for getting medication refills, more often than not, Hardy, Kaiser, Potts, Longest, Kimmel, Brooks, Waggoner, Arbuckle, and Baker refused to refill his prescriptions during the relevant time period. (Doc. 9, p. 15). Plaintiff verbally complained, and he wrote grievances and kites on this issue. (Doc. 9, p. 15). Hodge, Duncan, Tredway, Storm, and Moore ignored Plaintiff's grievances. (Doc. 9, p. 15). Plaintiff alleges that the failure to respond to his grievances means that Hodge, Duncan, Tredway, Storm, and Moore adopted a policy or custom of delaying and denying access to prescribed medication. (Doc. 9, p. 15). Plaintiff alleges that this policy or custom caused his harm because the medical providers knew that they would not be reprimanded for not refilling medications. (Doc. 9, p. 15).

Plaintiff further alleges that once he began to file grievances and complaints, the delays in refilling his medications increased. (Doc. 9, p. 16). Specifically, prior to filing grievances and complaints, medical providers used to give him stock on hand to tide him over, but, with the exception of certain "new" nurses, ceased that practice after Plaintiff began complaining. (Doc. 9, p. 16).

Plaintiff also alleges that Godinez failed to create a policy that specifies which situations are medical emergencies. (Doc. 9, p. 16). Plaintiff further alleges that as a result of this failure, IDOC correctional officers have adopted a practice of treating inmates that can "walk and talk" as if they are not suffering from emergency medical conditions. (Doc. 9, p. 16). The policy has caused correctional officers to delay and deny Plaintiff access to medical staff. (Doc. 9, p. 16). Further, on at least one occasion, Lt. McCarthy contacted Brooks, Arbuckle, Kimmel, and Baker and was told to tell Plaintiff to submit a sick call slip regarding his symptoms, in lieu of following correct nursing treatment protocols. (Doc. 9, p. 16). Plaintiff considers this a failure of Brooks, Arbuckle, Kimmel, and Baker to treat his "serious and life-threatening symptoms." (Doc. 9, p. 16).

Plaintiff made medical complaints and requests to Hardy in August 2012 during the asthma clinic regarding the amount of beans in his diet. (Doc. 9, p. 17). Plaintiff alleges that the beans were causing vomiting and abdominal pains. (Doc. 9, p. 17). Plaintiff alleges that Hardy told dietary supervisor Waltz about Plaintiff's complaints, and Waltz promised to ensure that Plaintiff received beans every day. (Doc. 9, p. 17). Plaintiff was told that he was not allergic to beans, although he alleges that Hardy, Waltz, and other dietary supervisors never tested him for any allergy between August 2012 and April 2014. (Doc. 9, p. 17). Plaintiff informed Hardy, Waltz, Vickie Walker, Brooks, and Mr. Walker that he was not eating beans and as a result suffered from muscle cramps, hunger pains, severe migraines, and lethargy, but that nothing was ever done to accommodate his nutritional needs. (Doc. 9, p. 17). Plaintiff also alleges that the exposure to beans caused him to experience symptoms from his other diagnosed medical conditions. (Doc. 9, p. 17). Plaintiff was also fed soy during this time. (Doc. 9, p. 17).

In March or April 2014, Plaintiff suffered from an anaphylactic reaction and had to be escorted to the HCU by Nurse Gates. (Doc. 9, p. 17). This occurred two more times, at which point a nurse told Plaintiff that Hardy should have given him a no-beans diet. (Doc. 9, p. 17). The unknown nurse also told Plaintiff that Hardy did not order the diet because of Plaintiff's complaints and

grievances. (Doc. 9, p. 17). Plaintiff was ultimately prescribed a no-bean, no-soy diet. (Doc. 9, p. 17-18). Despite this order, from March or April 2014 until October 8, 2014, Plaintiff was repeatedly served soy and bean products, or food that had come into contact with soy and bean products. (Doc. 9, p. 18). This caused Plaintiff to suffer anaphylactic reactions, muscle cramps, hunger pains, migraines, and lethargy. (Doc. 9, p. 18).

Plaintiff was transferred to the segregation unit in late August 2014. (Doc. 9, p. 18). While there, he was repeatedly fed soy and bean products that were labelled improperly as "no-soy, no-bean." (Doc. 9, p. 18). Plaintiff submitted nurse sick call slips to Hundley, Dean, Ochs, and other various guards, licensed practical nurses, and registered nurses during the medical call line. (Doc. 9, p. 18). But Plaintiff was never scheduled for nurse sick call. (Doc. 9, p. 18). Instead, Arbuckle and other nurses falsified Plaintiff's medical records to state that he did not request medical care. (Doc. 9, p. 18).

Plaintiff filed grievances and other complaints with Ochs, Brake, Dean, Hundley, Winka, Selby, Adamson, Ray, Arbuckle, and/or other nurses to treat his anaphylaxis and/or other symptoms. (Doc. 9, p. 19). He also endured undocumented hunger strikes. (Doc. 9, p. 19). None of the above listed Defendants helped Plaintiff. (Doc. 9, p. 19).

## Discussion

Based on the allegations of the Second Amended Complaint, the Court finds it convenient to divide the *pro se* action into ten counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1:** **Hardy, Kaiser, Potts, Longest, Kimmel, Brooks, Waggoner, Arbuckle, Baker, Hodge, Duncan, Tredway, Storm, Moore, HCU Administrator, and Director of Nursing were deliberately indifferent in violation of the Eighth Amendment to symptoms, including chest pain, facial and body swelling, migraines, shortness of breath, red itchy hives, burning and itchy sensations, and loss of consciousness caused by Plaintiff's asthma, allergies, heartburn, cysts/infections, and funguses when they refused to**

refill Plaintiff's prescriptions between November 2011 and August 2014;

Count 2:      Hodge, Duncan, Tredway, Storm, Moore, HCU Administrator, Director of Nursing, and Wexford Health Sources had a policy or custom of delaying access to medication by allowing staff to not timely fill prescriptions in violation of the Eighth Amendment;

Count 3:      Plaintiff was retaliated against in violation of the Eighth Amendment for filing grievances and complaints regarding the delay in filling his prescriptions when Hardy stopped giving him stock to tide him over between refills;

Count 4:      Godinez, Hodge, Duncan, Tredway, Storm, Moore, HCU Administrator, Director of Nursing, and Wexford Health Sources failed to institute a policy of what constitutes a medical emergency, causing correctional officers to adopt an erroneous policy of determining that certain events are not medical emergencies without the input of medical personal which has harmed Plaintiff in violation of the Eighth Amendment;

Count 5:      Brooks, Arbuckle, Kimmel, and Baker were deliberately indifferent in violation of the Eighth Amendment to Plaintiff's serious medical need on one occasion when Lt. McCarthy contacted them for guidance when they instructed McCarthy to tell Plaintiff to put in a sick call slip in lieu of treating him on an emergency basis;

Count 6:      Hardy was deliberately indifferent to Plaintiff's serious medical need in August 2012 when Plaintiff complained to her that he was allergic to the beans in his diet and Hardy did nothing;

Count 7:      Hardy retaliated against Plaintiff by instructing Waltz to modify Plaintiff's trays so that he received beans, which he is allergic to, every day, refusing to test Plaintiff for an allergy to beans, and by failing to order a no-beans diet between August 2012 and April 2014;

Count 8:      Hardy, Waltz, Vickie Walker, Brooks, and Mr. Walker were deliberately indifferent to Plaintiff's serious medical need when he experienced muscle cramps, hunger pains, migraines, and lethargy as a result of receiving meal trays with beans, and they failed to take any action;

Count 9:      Hundley, Dean, Ochs, Brake, Arbuckle, Winka, Selby, Adamson, and Ray and were deliberately indifferent in violation of the Eighth Amendment to Plaintiff's serious bean allergy when they ignored sick call slips that Plaintiff submitted regarding his allergic reactions to beans and falsified his medical records;

**Count 10:**     **Waltz and other dietary supervisors were deliberately indifferent to Plaintiff's serious medical needs when they refused to test him for a beans allergy between August 2012 and April 2014.**

Plaintiff's claims can be loosely grouped into three categories: (1) deliberate indifference to serious medical needs; (2) *Monell* claims for deliberate indifference to serious medical needs; and (3) retaliation claims.

To state a claim for deliberate indifference to serious medical needs, Plaintiff must show (1) that he suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Plaintiff alleges he was subjected to deliberate indifference in **Counts 1, 5-6, 8-9**. Specifically he alleges that he suffered from various serious medical conditions, and that the defendants refused to treat those conditions appropriately, either by refusing to address them or by making Plaintiff wait a long time for his medication re-fills. While Plaintiff's allegations are short on specifics, at this time, the Court finds that he has adequately stated deliberate indifference claims in those counts. **Counts 1, 5-6, and 8-9** will be permitted to proceed.

However, Plaintiff's deliberate indifference claim in **Count 10** that Waltz and unknown dietary supervisors did not test him for a beans allergy must be dismissed with prejudice at this time. There is no allegation that the dietary supervisors were part of the health care unit. Further, there is no allegation that diagnosing food-based conditions was part of their job description or that they had the authority to order medical testing. In the absence of such allegations, the dietary supervisors were entitled to rely on the medical decisions of treating personal. *Hayes v. Snyder*, 546 F.3d 516, 527-58 (7th Cir. 2008). They had no obligation to intervene in Plaintiff's medical treatment. Plaintiff's **Count 10** is therefore dismissed with prejudice.

Turning now to the second grouping of claims, in order to state a *Monell* claim, a plaintiff "must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago,* 690 F.3d 829, 833 (7th Cir. 2012). Plaintiff can demonstrate this by alleging (1) an actual official policy; (2) a widespread practice or custom; or (3) a deliberate act from an employee with final policy-making authority. *See id.* at 834; *see also Gonzalez v. Village of West Milwaukee,* 671 F.3d 649, 664 (7th Cir. 2012) (citations omitted).

**Counts 2 and 4** are claims premised on *Monell* liability. Plaintiff has pleaded that policies (**Count 2**) or lack of policies (**Count 4**) caused him injuries. He has also sketched the outlines of the policies and identified persons and groups whom he believes are the policymakers. Therefore, the Court will also permit **Counts 2 and 4** to proceed at this time.

Finally, as to Plaintiff's retaliation claims, an inmate has a constitutional right to file a grievance as part of his right of access to the courts under the First Amendment. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). To succeed on a First Amendment retaliation claim, a plaintiff must prove (1) that he engaged in conduct protected by the First

Amendment; (2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff has alleged two counts of retaliation. In **Count 2**, Plaintiff alleges that when he filed grievances and other complaints regarding the time it took to get refills and renewals of medication, his refills and renewals took even longer to receive because certain nurses were retaliating against him. Filing grievances and complaints is a protected First Amendment activity, and Plaintiff's claim that the denial of medical care would deter First Amendment activity is colorable at this stage. However, the only nurse Plaintiff names in **Count 2** is Nurse Hardy. The claim survives against her, but for reasons discussed more fully below, all unknown nurses are dismissed from this claim without prejudice. Likewise, **Count 3**, which alleges that Hardy retaliated against Plaintiff for seeking medical attention for his bean allergy by taking steps to ensure Plaintiff received extra beans also survives threshold review.

The Court also will dismiss the majority of the unknown defendants at this time. In many of the Counts, Plaintiff has attempted to state claims against unknown parties or groups of parties. For example, in the retaliation claim in Count 2, Plaintiff alleges that he wrote grievances against unknown nurses who then retaliated against him. This is improper. While Plaintiff may use "John Doe" or "Jane Doe" to refer to parties whose names are unknown, he must still follow pleading standards and include a short, plain statement of the case against that party. Plaintiff's claims against the groups unknown defendants in all counts are too vague to survive threshold review. Plaintiff does not describe the unknown defendants or even state how many there are. Plaintiff does not identify the dates and times that he encountered unknown defendants. He does not ascribe any conduct to them specifically. In certain instances, Plaintiff uses words that suggest only the possibility of liability, for example "may have" or "and/or." Returning to the example of Count 2, Plaintiff states both that unknown nurses retaliated against him but that a certain group of other "new" nurses did not retaliate

against him. Plaintiff could bring claims against any nurse in the facility with this description as the Court has no way of determining whether any given nurse was part of the group that retaliated against Plaintiff or part of the new nurses that did not.

Plaintiff has named 28 individual defendants already. Allowing Plaintiff to include large numbers of unknown defendants in his Second Amended Complaint would be effectively allowing Plaintiff to amend his complaint further at will without review of this Court, a result contrary to both the local rules and § 1915A. Because the Second Amended Complaint is so vague as to the unknown defendants, Plaintiff could ascribe any conduct he chooses to any number of people that occurred at any time during the relevant time period. The only exceptions are Plaintiff's claims against the Health Care Unit Administrator and the Director of Nursing, as it will be a matter of simple discovery for Plaintiff to identify which individuals held those positions during the relevant time period. Accordingly, the Court has included those Defendants in several surviving claims. But no authority allows Plaintiff to include such a large back door as "unknown staff," and therefore the Court dismisses all unknown defendants at this time because Plaintiff's allegations against them are too vague.

The Clerk of Court is **DIRECTED** to replace the designation "Unknown Party" on the docket sheet with "HCU Administrator" and "Director of Nursing." Should Plaintiff come into possession of specific facts that would support liability against other defendants not already listed, he may seek leave to amend his complaint once more, a process that Plaintiff has successfully utilized in the past. *See* Case No. 11-cv-871-SCW.

When this case was docketed, the Clerk of Court added a Defendant "March" to the docket sheet. Plaintiff's Second Amended Complaint does not contain any allegations against a defendant "March," and upon careful review of the original Complaint, it appears that Plaintiff was attempting to bring claims not against "March," but against Marc Hodge, who is listed in the allegations. Marc Hodge appears on the docket sheet simply as "Hodge," even though Plaintiff refers to him elsewhere

as Marc Hodge. As it appears that "March" was added to the docket in error, the Clerk of Court is **DIRECTED** to strike that defendant and change "Hodge" to "Marc Hodge."

**Pending Motions**

Plaintiff's pending motions are **DENIED**. (Doc. 7) (Doc. 10). As a prisoner proceeding *in forma pauperis*, the Court will serve Plaintiff's Second Amended Complaint at its own expense already, and so Plaintiff's motion for service is unnecessary. (Doc. 7). This Order also serves as a status of the case, making Plaintiff's Motion for Status **MOOT**. (Doc. 10).

**Disposition**

Plaintiff's **Counts 1-9** survive threshold review. **Count 10** is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to terminate Defendant "March" and change Defendant "Hodge" to "Marc Hodge." The Clerk of Court is further directed to replace "Unknown Party" with "HCU Administrator" and "Nursing Director." All other unknown defendants are dismissed without prejudice as Plaintiff has failed to state a claim against them.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Arbuckle, Hardy, Kaiser, Potts, Longest, Kimmel, Brooks, Waggoner, Baker, Hodge, Duncan, Tredway, Storm, Moore, Godinez, Waltz, Vickie Walker, Brooks, Walker, Hundley, Dean, Ochs, Brake, Winka, Selby, Adamson, Ray, and Wexford Health Sources: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald J. Wilkerson for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full

amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 8, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**